ANDREWS MINING & MILLING CO.
v. ATKINSON et al.

No. 30631. March 23, 1943.

Rehearing Denied April 13, 1943.

*135 P. 2d 960.*

---

A. L. Commons, of Miami, for petitioner.

A. H. Garner, of Joplin, Mo., J. J. Smith, of Miami, Okla., and Mac Q. Williamson, Atty. Gen., for respondents.

OSBORN, J. This is an original action in this court instituted by the Andrews Mining & Milling Company, hereinafter referred to as petitioner, to obtain a review of an award of compensation made by a trial commissioner of the State Industrial Commission in favor of Charles Atkinson, hereinafter referred to as respondent.

The award of the commission, entered on October 1, 1941, was predicated upon a finding that on January 20, 1941, respondent, while employed by petitioner, sustained a compensable injury to his right ear resulting in a 60 per cent permanent loss of hearing in said ear. Compensation was awarded in accordance with the finding.

The principal assignments of error are that there was no evidence to support the finding that respondent received an accidental injury, and that the award was unsupported by competent medical testimony.

The record discloses that the respondent was employed by the petitioner in a mine; that he was the operator of a jack hammer, which is a tool resembling an electric drill operated by

means of compressed air; that the operation of said jack hammer causes considerable noise and vibration. On the date of the injury to respondent's ear it was shown that he was opperating the jack hammer within a pocket or recess approximately four or five feet deep; that he was compelled to lie on his side while operating the machine within twelve inches or less distance from his head. He testified that about the middle of the afternoon he noticed a pain in his right ear and in his head and his ears began to ring; that since the date of the injury he had been totally unable to hear out of his right ear and the ringing in his ears had continued. There was evidence to the effect that prior to the date of injury respondent's hearing had been perfect and that he had previously had no difficulty with his ears or his head. Other evidence was introduced to the effect that it was unusual to operate a jack hammer in the manner and under the conditions in which the respondent was operating the machine at the time of the injury.

A number of medical men were sworn and testified before the trial commissioner. All of said witnesses were agreed that there was a substantial loss of hearing in the right ear of the respondent, but the testimony of said witnesses was highly conflicting as to the cause of the disability. Evidence was offered, however, to the effect that the loss of hearing resulted from a perforation of the right ear drum, and that said injury was a result of compression or vibration.

The respondent testified that a few days after the injury he was examined by one Dr. Cannon of Miami, who told him that his "ear drum was punctured."

Dr. Roy Freeman, called as a witness in behalf of the respondent, testified as follows:

"A. On examining Mr. Atkinson, I found what appeared to be a perforation of the right ear drum. This perforation could have been caused by several means, such as compression internally. That would, of course, appear from atmospheric conditions. A severe compression would produce a perforation of that drum. Q. Doctor, you just examined him the one time? A. Yes, one time. Q. If this injury, as he related it to you, occurred, and the conditions you found existing today happened in January of 1941 or February of 1941, and the condition as it exists now having continued, and him having been examined by a number of other doctors, specialists in their line, and they report at least 60 per cent loss of hearing, I will ask you, if, in your opinion, that condition and that extent of loss of hearing still exists at this time? A. I couldn't tell you what percentage exists at the present time. Q. I will ask you this, if he was examined on March 19, 1941, and was examined on June 2, 1941, bearing in mind those dates, and at that time a finding of 60 per cent loss of hearing was made, with the experience you have had, would that indicate a permanent disability of that extent? A. His condition is one that could become worse. Q. I will ask you this, if that percentage of loss of hearing was found at that time, at this time would it improve or will it ever improve, in your opinion? A. I think it will become worse."

We are committed to the rule that the term "accidental injury" is not to be given a narrow or restricted meaning, but is to receive a broad and liberal construction, with a view of compensating injured employees where disabilities result from compensable personal injuries. Terminal Oil Mill Co. v. Younger, 188 Okla. 316, 108 P. 2d 542; National Biscuit Co. v. Lout, 179 Okla. 259, 65 P. 2d 497.

An "accident" is an event happening without any human agency, or if happening through human agency, an event which, under the circumstances, is unusual and not expected to the person to whom it happens. In the term "accidental injuries," the substantive "injuries" expresses the motion of a thing or event, that is, the wrong or damage done to the person, while "accidental" qualifies and describes the noun by ascribing to "injuries" a quality or condition of happening, or coming by

chance or without design, taking place unexpectedly or unintentionally. See Vaughn & Rush v. Stump et al., 156 Okla. 125, 9 P. 2d 764; Winona Oil Co. et al. v. Smithson et al., 87 Okla. 226, 209 P. 398; Ward v. Beatrice Creamery Co., 104 Okla. 91, 230 P. 872; Hidden Treasure Coal Co. v. Urist, 112 Okla. 245, 240 P. 640; Shell Petroleum Corp. v. White, 176 Okla. 573, 56 P. 2d 830; Wilson & Co. v. State Industrial Commission, 177 Okla. 234, 58 P. 2d 905; Johnson Oil & Refining Co. et al. v. Guthrie et al., 167 Okla. 83, 27 P. 2d 814, 90 A. L. R. 616, and see annotation at page 619.

In the case of Johnson Oil & Refining Co. v. Guthrie, supra, it was pointed out that an "accident," as contemplated by the Workmen's Compensation Law, is distinguished from an occupational disease in that it arises by some definite event, the date of which can be fixed with certainty. The evidence of respondent meets the requirement that the time of injury be fixed with certainty. There is evidence to the effect that prior to the time of the injury respondent had experienced no difficulty with his ears or his head, and since the time of the injury the disability as well as a ringing of the ears had been continuous. After giving consideration to the nature of the duties being performed by respondent at the time of the injury and the conditions under which said duties were being performed in connection with the nature of the injury itself, we conclude that the finding of the commissioner that respondent sustained an accidental personal injury arising out of and in the course of his employment is sustained by competent evidence.

The disability of respondent was of such character as to require the testimony of skilled and professional persons to determine its cause and origin as well as its nature and extent. Texas Co. v. State Industrial Commission, 183 Okla. 461, 83 P. 2d 369; Oklahoma Natural Gas Co. v. White, 184 Okla. 152, 85 P. 2d 756. We have heretofore shown that the evidence of medical men was presented. Said evidence was competent and sufficient to sustain the finding of causal connection between the accidental injury and the disability sustained by respondent.

The petitioner further contends that the evidence fails to show that respondent was an employee of petitioner at the time of the accidental injury. We have examined the evidence relied upon and find the proposition to be without merit.

The award is sustained.

CORN, C. J., and RILEY, HURST, and ARNOLD, JJ., concur. GIBSON, V. C. J., and BAYLESS, WELCH, and DAVISON, JJ., dissent.